## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISON

| | | |
|---|---|---|
| **JEFF TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| | ) | |
| **LNS DEVELOPMENT,** | ) | **4:19-cv-1104** |
| **LLC., and GFG** | ) | |
| **MANAGEMENT, LLC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

### I.   INTRODUCTION

Plaintiff, Jeff Taylor (hereinafter "Mr. Taylor"), files this Title III, Americans with Disabilities Act (hereinafter "ADA") action, pursuant to 42 U.S.C. §12181, *et seq*. In Count One of the Complaint, the Plaintiff seeks to enjoin the Defendants to remove architectural barriers. In Count Two of the Complaint, the Plaintiff seeks to enjoin the Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three of the Complaint, the Plaintiff seeks to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three of the Complaint seek independent relief in addition to the removal of architectural barriers. Count Four of the Complaint seeks

to enjoin the Defendants' failure to design and construct the facilities to ADA compliance. In Count Five of the Complaint, the Plaintiff seeks to enjoin the Defendants to remediate their website which fails to integrate an accessible platform usable by disabled individuals. In Count Six of the Complaint, the Plaintiff seeks to enjoin the Defendants' failure to take necessary steps to ensure the Plaintiff is not denied services, segregated, or otherwise treated differently than individuals who do not have disabilities via the services offered on www.marbleslab.com.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. Because this is an action for declaratory and injunctive relief pursuant to Title III of the ADA, 42 U.S.C. §12181, *et seq.*, and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Southern District of Texas, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Texas.

3. Mr. Taylor is diabetic, which caused a below the knee amputation of his left leg that limits his ability to perform manual tasks, walk, stand, lift, bend, grab, all of which are major life activities pursuant to 42 U.S.C. §12102 (2)(A).  As result of Mr. Taylor's disability, he requires the use of mobility aids and assistive technology.  Accordingly, Mr. Taylor is disabled pursuant to the ADA as he suffers a physical impairment substantially limiting one or more major

life activities.  42 U.S.C. § 12102; *see also* 28 C.F.R. § 36.104.

4.    The Defendant, LNS Development, LLC. (hereinafter "LNS" and commonly known as "Marble Slab") is a limited liability company that is both registered to conduct business and is conducting business within the State of Texas sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, LNS is a franchise of GFG Management, LLC and "operates" a creamery located at 9762 Katy Freeway, Houston, TX 77055. 42 U.S.C. § 12182. The creamery is a commercial facility because the store is intended for nonresidential use and affect commerce. 42 U.S.C. § 12181(2)(A). Moreover, the restaurant serves "fresh, homemade ice cream in store" which qualifies the creamery as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5.    The Defendant, GFG Management, LLC (hereinafter "GFG"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Texas sufficient to create both general and *in personam* jurisdiction. Upon information and belief, GFG "owns" the public internet website www.marbleslab.com  and the goods and services offered on the world-wide website services that are available to the public at Marble Slab. Therefore, pursuant to 42 U.S.C. § 12182, GFG is responsible for creating, implementing, and maintaining policies, practices and procedures, and further,

providing auxiliary aids and services to its web-based services. 42 U.S.C. § 12182. Consistent with the text and legislative history of the ADA, the Department of Justice (hereinafter "Department") has long affirmed the application of Title III of the ADA to websites of public accommodations. Legislative history also supports that websites of public accommodations are covered under Title III. Congress' purpose in enacting the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), having found that "discrimination against individuals with disabilities persists in such critical areas as . . . public accommodations . . ." and that "many people with physical or mental disabilities have been precluded from [fully participating in all aspects of society]." 42 U.S.C. § 12101(a)(3) and (1). Although the internet did not exist when Congress enacted the ADA in 1990, Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations. Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations over their websites. *See Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565, 574 (D. Vt. 2015).

**6.** Substantially all events and omissions occurred, and the real property is located

at the Southern District of Texas and the Defendants are citizens thereof. 42 USC 1391 (b)(2).

7.   Mr. Taylor frequently shops at Marble Slab because it serves "fresh, homemade ice cream in store." Marble Slab is a conveniently located 19 miles from Mr. Taylor's home. Mr. Taylor wants to continue attempting to enjoy the goods and services at Marble Slab because they are "the freshest ice cream on earth." Mr. Taylor will return not only to shop, but to also confirm compliance with the ADA by the Defendants. Mr. Taylor intends to return to Marble Slab, but he does not know exactly when he will return to Marble Slab or use its online services, because he has not planned every trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. *See*, *e.g.* *Parr v.  L & L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw 2000); *Segal v. Rickey's Restaurant and Lounge, Inc*., No. 11-61766-cn, (S.D. Fla 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment".).

8.   Because of the barriers described below, and throughout the Complaint, the Plaintiff has been denied the full and equal enjoyment of the Defendants' premises based on his disabilities.

9.   Accordingly, the Plaintiff has Article III standing to pursue this case because

(1) he is disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' creamery is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the creamery by architectural barriers, by being denied access by the Defendants' practices described throughout this Complaint, by the Defendants' denial of his full and equal enjoyment as the able-bodied, as described throughout the Complaint, by being denied access by the Defendants' failure to design and construct the facility to ADA compliance, by being denied access by the website failing to integrate an accessible platform usable by disabled individuals, by being denied access by failing to take necessary steps to ensure that Mr. Taylor is not denied services, segregated, or otherwise treated differently than individuals who do not have disabilities through the use of the world wide web service, and (4) because of these injuries there exists a genuine threat of imminent future injury, as described below.

## II.  PLAINTIFF'S CLAIMS

**ADA, Title III**

10. On or about July 26, 1990, Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of

Title III of the ADA was January 26, 1992. 42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, § 36.304.

**11.** Pursuant to 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a store providing fresh, homemade ice cream in store to the public. Accordingly, Marble Slab is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**Defendants' Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in this Complaint**

**12.** The Plaintiff is informed and believes based on publicly available information that the establishment in which the LNS store located at 9762 Katy Freeway, Houston, TX 77055 was first constructed in 2010.

**13.** Upon further information and belief based on publicly available information, alterations and/or improvements were not made to the LNS store located at 9762 Katy Freeway, Houston, TX 77055.

**14.** The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an existing facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26,

1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a); (b). 28 C.F.R. § 36.402. "Readily accessible to and usable by. . ." is the new construction standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by. . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

15. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New

construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii), which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that

were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

16. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

17. The Defendants have discriminated, and continue to discriminate, against the Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Marble Slab in derogation of 42 U.S.C. § 12101 *et seq*., and as prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a); (b). The Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

18. As described above, prior to the filing of this lawsuit, the Plaintiff was denied full and safe access to all the benefits, accommodations, and services offered to individuals without disabilities within and about the Defendants' facility. The Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishments in violation of

the ADA. Because of the foregoing, the Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

19. The Plaintiff has definite plans to return to Marble Slab in the future, as described in Paragraph 7. The Plaintiff will return to Marble Slab within the next few months not only to enjoy ice cream, but to see if Marble Slab has repaired the barriers and changed its practices and procedures. Even when the Marble Slab is repaired, the Plaintiff will continue to go there to eat. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendants' workers at the establishment use the physical architectural elements of the establishment. The barriers created by human activity will need to be reviewed and maintained forever, to be sure the Defendants' management and workers continuously act in a manner that do not create barriers. Absent remedial actions by the Defendants, the Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by the Defendants based on his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when he returns to the store." Due to the definiteness of

the Plaintiff's plans to continue visiting the subject establishment in the future, there exists a genuine threat of imminent future injury.

## Architectural Barriers

20. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

21. The Plaintiff has been throughout the establishment, from the entrance to and throughout the store areas, to the sales and service counters, to the dining area, throughout circulation paths and accessible routes, and service areas, paths of travel, and particularly, but not limited to, all of which is more specifically described below. The Defendants' facility located at 9762 Katy Freeway, Houston, TX 77055, more commonly known as "Marble Slab", violates the ADA, particularly, but not limited to:

## DINING AREA

(1) The Defendants provide dining surfaces for the consumption of food or drink at the indoor dining area for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Marble Slab's place of public

accommodation which includes but is not limited to the following failures of Marble Slab:

**(a)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining an accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor dining area seating spaces and its associated elements as unusable by disabled individuals.

**(b)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space.

**(c)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface.

**(d)** There is not at least 5% of each type of seating spaces and standing spaces disbursed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment.

**(2)** The Defendants provide dining surfaces for the consumption of food or drink at the outdoor dining area for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Marble Slab's place of public accommodation which includes but is not limited to the following failures of Marble Slab:

**(a)** There is not at least 5% of the seating spaces and standing spaces at the outdoor dining surfaces that are maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to the accessible route to the dining surfaces

which has the discriminatory effects of rendering the outdoor seating

spaces and its associated elements as unusable by disabled individuals.

**(b)** There is not at least 5% of the seating spaces and standing spaces at the

outdoor dining surfaces that are maintained in operable condition with

the ADA Standards for Accessible Design so that the seating spaces

maintain the required t-shaped and/or circular turning clear floor space.

**(c)** There is not at least 5% of the seating spaces and standing spaces at the

outdoor dining surfaces that are maintained in operable condition with

the ADA Standards for Accessible Design so that the seating spaces

maintain the required 30x48 inches of clear floor space that is positioned

for a forward approach to the dining surface.

**(d)** There is not at least 5% of the seating spaces and standing spaces at the

outdoor dining surfaces that are maintained in operable condition with

the ADA Standards for Accessible Design so that the tops of the dining

surfaces measure 28 inches minimum and 34 inches maximum above the

finished which includes the required 30 inches of clear dining surface so

that the surface does not prohibit disabled individuals from being equally

afforded the opportunity to sit and enjoy the goods and services at the

establishment.

## RESTROOM

**(3)** The Defendants provide restrooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Marble Slab:

**(a)** The restroom entrance door fails to be maintained in conformance with the ADA Standards for Accessible design in all the ways that are required to be readily accessible to and usable by individuals with disabilities which includes but is not limited to maintaining the required maneuvering clearance at the doorway, providing operable door hardware that that is usable by the disabled, and maintaining all the required associated elements at the entrance door in a readily Accessible condition to as to be usable by the disabled.

**(b)** There is not at least one toilet room that is maintained or otherwise configured in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals including without limitation the maneuvering clearance in the toilet room, and among other associate

design requirements which has the discriminatory effects of rendering the restroom and its associated elements as unusable by the disabled.

**(c)** The restroom fails to maintain at least one ADA accessible toilet compartment in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet compartment is arranged for either a left or right hand approach with the center line of the water closet located 16-18 inches from the side wall with the top of the water closet seat surface 17-19 inches above the finished floor and otherwise readily accessible to and usable by disabled individuals.

**(d)** The restroom fails to maintain at least one ADA accessible toilet room in operable condition by conforming with the ADA Standards for Accessible Design so that the toilet room is arranged for either a left or right hand approach with the required maneuvering clearance maintained around the water closet so that the maneuvering clear floor space around the water closet is not obstructed and consequently rendering the compartment as unusable by the disabled. § 604.3.1.

**(e)** The side wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum

of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor.

**(f)** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor.

**(g)** Marble Slab fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities.

## LAVATORY

**(4)** The Defendants provide a lavatory in the restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Marble Slab:

**(a)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled.

**(b)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach.

**(c)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals.

**(d)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor.

**(e)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise

restrict the continuous flow of paper.

**(f)** The soap dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist.

**(g)** The light switch fails to be maintained in a usable condition so that it measure the required height for unobstructed and/or obstructed reach ranges and does not require the use of tight grasping, twisting, and/or pinching of the wrist.

22. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23. The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

24. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant the Plaintiff's injunctive relief, including an order to alter the discriminating facilities to make them readily accessible to and usable by individuals with disabilities to the extent required by the ADA and closing the facility until the requisite modifications are completed; and an order to have the Defendants

modify their policies, practices, and procedures, to provide equal use of their facilities, services, and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

25. The Plaintiff incorporates by reference and realleges all the paragraphs above.

26. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1).

27. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an unequal benefit and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids

historically have been provided segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens."  *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

28. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

29. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

30. By its clear text, ADA, Title III requires a public accommodation to provide

individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

31. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon*

*v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.*

## Defendants Failed Practices and Lack of Policies are Discriminatory

32. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*

33. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and

services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

34. As detailed below, the Defendants have failed to make reasonable modifications in their policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, the Defendants denied services, segregated or otherwise treated the Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), the Defendants have discriminated against Plaintiff. The Defendants will continue that discrimination forever until enjoined as the Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35. The Defendants either have no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that the Defendants have failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36. The Defendants' use of their store, and their practices at the store located at 9762 Katy Freeway, Houston, TX 77055 create barriers, and consequently,

denies the Plaintiff the full and equal enjoyment of the goods and services at Marble Slab. Those practices include:

(a) The Defendants fail to provide accessible dining to the Plaintiff and other disabled individuals, so that the Plaintiff has access to sit and enjoy ice cream as the able-bodied;

(b) The Defendants fail to provide a restroom that is readily to and usable accessible for disabled individuals as its restrooms prohibit disabled individuals from the full and equal opportunity to maneuver independently throughout and have access to its water closets as abled-bodied individuals;

(c) The Defendants fail to provide an accessible lavatory to Plaintiff and other disabled individuals, so that the Plaintiff readily accessible to and usable access to the lavatory sink and its associated elements as the able-bodied;

(d) The Defendants' policies, practices and procedures are conducted without regard to disabled individuals;

37.   As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, the Defendants have no policies, practices, and procedures or it has failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same

experience at its store as individuals without disabilities. 42 U.S.C. 12182(b)(1)(A).

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, the Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendants' discriminating policies, practices, and/or procedures has not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that the Defendants create and adopt a corporate practice and policy that the Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from the Defendants' store consistent with the ADA; (2) the Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the store; (3) the Defendants will modify its practice of making ADA Title III architectural barrier remediation's only

upon demand by the disabled.

41. As pled above, GFG Management, LLC, "owns" the Marble Slab store located at 9762 Katy Freeway, Houston, TX 77055, which is "operated" by its franchisee, LNS Development, LLC, and therefore, pursuant to 42 U.S.C. § 12182, is responsible for creating, implementing, and maintaining policies, practices, and procedures, as alleged above.

42. The ADA is over twenty-five (25) years old. The Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, the Plaintiff provides sufficient notice of his demands for an alteration in the Defendants' policies, practices, and procedures.

44. The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorneys' fees, costs, and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

45. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**46.** The Plaintiff incorporates by reference and realleges all the paragraphs above.

**47.** 42 U.S.C. § 12182(a) provides:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

**48.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**49.** Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-

sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (2).

51. The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals based on a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or

accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). The Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*., and the regulations promulgated thereunder.

54. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess.

35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

55. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is that the Defendants must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005); *see also*, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

57. The Plaintiff was denied full and equal access to Marble Slab which provides "fresh, homemade ice cream in store." More specifically, the Plaintiff wants to

be afforded the same level of service that is offered to non-disabled individuals. The Defendants have failed to provide to the Plaintiff as follows: the Defendants failed to provide an accessible dining for disabled individuals which means that unlike the non-disabled, the disabled must struggle sit and enjoy the ice cream independently, if they can sit and enjoy it at all; the Defendants failed to provide the Plaintiff an accessible restroom like the able-bodied, the disabled are challenged or denied the opportunity to independently use the restroom, move throughout the restroom and prohibited from using all the other elements of the restroom; the Defendants failed to maintain the lavatory as readily accessible to usable by the Plaintiff  and other disabled individuals. All the foregoing failures by the Defendants inhibited the Plaintiff from having the same experience that non-disabled individuals have when at Marble Slab.

58. In its Preamble to the Title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

59. The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

60. Thus, the Defendants' use of the accessible features constitutes statutory discrimination in violation of the ADA, because the Defendants have segregated and separated the disabled from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a broad mandate to eliminate discrimination against disabled individuals, and to

integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

61. The Defendants discriminated against the Plaintiff by denying the Plaintiff the full and equal enjoyment and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied the Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of Marble Slab.

62. The Defendants' conduct and the Defendants' unequal treatment of the Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, the Defendants will continue to treat the Plaintiff and others similarly situated unequally.

63. The Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, the Defendants will continue to not maintain the required accessible features at the Defendants' facilities. 28 C.F.R. § 36.211(a).

64. The Plaintiff has been obligated to retain the undersigned counsel for the filing

and prosecution of this action. He is entitled to have his reasonable attorneys'

fees, costs, and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

65.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal

acts of the Defendants.

# COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12183(a)(1)
*(Failure to design and construct facilities for ADA compliance)*

66.   The Plaintiff incorporates by reference and realleges all the paragraphs above.

67.   42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

68.   Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* § 12101(a)(5). In its Preamble to the Title III

regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

69.   To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *Id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id*.

70.   As the legislative history makes clear, the ADA is geared to the future, the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

71. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

72. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facilities.

73. The Defendant, LNS Development, LLC, as the "operator" of the Marble Slab store, is directly involved in the designing and/or construction of its stores in this litigation for first occupancy after January 1993.

74. The Defendant was and is required to design and construct the Marble Slab store to be "readily accessible to and usable by individuals with disabilities." The Defendant violated the statute by failing to design and construct it store to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. The Defendant further violated the statute by failing to design and construct its stores in compliance with the ADA during planned alterations as described throughout this Complaint.

75. According to the Defendant's own publicly available information, the Defendant chose to design its store in a way that is not ADA Title III compliant

whatsoever. Defendant's systematic design of its store fails to afford disabled individuals the same ice cream experience that is afforded to individuals without disabilities.

76. To date, the Defendant's discriminating actions continue.

77. The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorneys' fees, costs, and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

78. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by the Defendants.

**COUNT FIVE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
*(Failure to Provide Website Accessibility)*

79. The Plaintiff incorporates by reference and realleges all the paragraphs above.

80. The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

81. Congress enacted the ADA in light of its findings that "individuals with

disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

82. Legislative history indicates that websites of public accommodations are covered by Title III. Although the internet did not exist when Congress enacted the ADA in 1990, the legislative histories state that Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations. Consequently, it is consistent with Congressional intent to include within Title III's coverage the goods and services provided by public accommodations through their websites. *See Nat'l Fed'n of the Blind v. Scribd*, 97 F.Supp. 3d 565, 574 (D. Vt. 2015).

83. The Justice Department has long affirmed the application of Title III to the websites of public accommodations. *The statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also

*Netflix,* 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994).

84. Today, internet technology enables individuals to participate actively in their community and engage in virtually all forms of commerce from the comfort and convenience of their home, to the extent that virtual reality through the internet is almost as important as physical reality in brick-and-mortar constructed public accommodations, in pursuing commerce from public accommodations. That websites were not explicitly written into the ADA at its passage in the early 1990s but are nevertheless covered does not indicate ambiguity in the ADA, but rather the breadth of the ADA. *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898, (E.D.N.Y. Aug. 1, 2017).

85. The Defendant did not allow the Plaintiff to use the website in the same manner as individuals without disabilities, because the website fails to integrate alternative platforms that enable disabled individuals who have limited use of their hands the opportunity to use the alternative platforms to navigate and select items on the page. The able-bodied online website user can use a mouse

to navigate, whereas individuals who have limited use of their hands cannot use assistive technology to navigate through the website. Moreover, the Defendant provides several services and associated benefits, including but not limited to, ordering a cake, ice cream selections and nutritional information, store locator, catering, access to rewards, among other services to able-bodied individuals, but fails to provide those same services to disabled individuals which relegates and otherwise segregates disabled individuals to inferior benefits and services of Marble Slab.

86.  The design of the Defendant's web site impedes the Plaintiff and others similarly situated from accessing the services, privileges and accommodations afforded able-bodied patrons through the web platform. The website fails to integrate alternative access methods that allow a person with limited manual dexterity to access the information and navigate the web site without being able to use a mouse. That is, the website design does not provide for functions to be carried out using a keyboard or voice input. On its website, the Defendant provides a plethora of services and associated benefits, including but not limited to, ordering a cake, ice cream selections and nutritional information, store locator, catering, access to rewards, among other services to the general public, but fails to provide those same services to persons with disabilities. Such actions relegate and otherwise segregate persons with disabilities to

inferior benefits and services offered by Marble Slab.

87.    As pled previously, intangible barriers to access are prohibited, just as tangible

barriers are prohibited.

88.    The actions by the Defendant violates:

(a) 42 U.S.C. § 12182(a), because its actions deny the Plaintiff full and

equal enjoyment of the Defendant's goods and services;

(b) 42 U.S.C. § 12182(b)(1)(A)(i), because the Defendant's actions deny the

Plaintiff equal participation in goods and services offered by the

Defendant;

(c) 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because the Plaintiff is provided

both separate and unequal benefits of the Defendant's goods and

services;

(d) 42 U.S.C. § 12182(b)(1)(B), because the Defendant does not provide its

goods and services in the most integrated setting appropriate;

(e) 28 C.F.R. 36.303(c), because the Defendant has failed to provide

auxiliary aids and services where necessary to ensure effective

communication with the disabled the Plaintiff.

89.    The Plaintiff does not allege that there are specific mandatory regulations for

websites that establish compliance or non-compliance as a matter of law. The

Plaintiff pleads, consistent with the Department of Justice determinations, that

in achieving such conformance and usability of websites by individuals with disabilities, the Defendant should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.1 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

90. To date, the Defendants' discriminating actions continue.

91. As pled above, GFG Management, LLC is the "owner" of the public internet website www.marbleslab.com and "operates" the world-wide websites services that are available to the public at Marble Slab. Therefore, it is responsible for the website.

92. The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

93. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by the Defendants.

## COUNT SIX
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### *(Failure to Provide Mobile Application Accessibility)*

94.  The Plaintiff incorporates by reference and realleges all the paragraphs above.

95.  The ADA was the most sweeping civil rights legislation since the Civil Rights
     Act of 1964. When it was enacted Congress had no conception of how the
     Internet would change global commerce. "[W]e were not communicating by e-
     mail, blog, or tweet; we were not filling virtual shopping carts with clothes,
     books, music, and food; we weren't banking, renewing our driver's licenses,
     paying taxes or registering for and taking classes online. Congress could not
     have foreseen these advances in technology. Despite Congress' great cognitive
     powers, it could not have foreseen these advances in technology which are now
     an integral part of our daily lives. Yet Congress understood that the world
     around us would change and believed that the nondiscrimination mandate
     contained in the ADA should be broad and flexible enough to keep pace."
     *Achieving the Promises of the Americans with Disabilities Act in the Digital
     Age—Current Issues, Challenges and Opportunities: Hearing before the H.
     Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the House
     Comm. on the Judiciary,* 111th Cong., 2d Sess. 111–95 (2010).

96.  Since the internet plays such a critical role in the personal and commercial lives
     of Americans, excluding disabled persons from access to covered entities that

use the internet and mobile applications as a means of reaching the public would defeat the purpose of this important civil rights legislation. Today, places of public accommodation are increasingly using mobile applications ("mobile apps") to provide services, benefits and goods more effectively to the public and expand the services the public accommodation has to offer in new ways. These services that are provided via a public accommodation for web applications, mobile application, and hybrid applications ("mobile platform") also need to be provided to disabled individuals.

97.   ADA Title III states that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii). Regulations promulgated by DOJ implementing Title III require public accommodations to provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Auxiliary aids and services include . . . *accessible electronic and information technology*, among other methods.  28

C.F.R. § 36.303(b). Auxiliary aids and services also include acquisition or modification of equipment or devices, and other similar services and actions. 28 C.F.R. 36.303(b)(3)-(4).

98.   The plain language of these statutory provisions applies to discrimination in offering the goods and services ''of'' a place of public accommodation or the services, programs, and activities ''of'' a public entity, rather than being limited to those goods and services provided ''at'' or ''in'' a place of public accommodation or facility of a public entity.

99.   The ADA and the Title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication between the two. The Defendant has chosen to provide a service through a mobile application to locate Marble Slab stores, view ice cream selections, accessories, and home goods, order merchandise online, enjoy rewards programs, among many other services through the mobile platform. The Defendant communicates all of that to able-bodied individuals as a service. Yet, the Defendant's use of its mobile application and the services it offers through the application do *not* communicate and provide services to the disabled individuals. This is contrary

to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]*" and that technological advances "*may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities*." *See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

100. The unlawful implementation of eligibility criteria in other contexts that are clearly covered by the Act is analogous to the Defendant's effective screening of the Plaintiff from using its mobile app. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if the Defendants screened guests as they entered, sending home guests that were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course*

*or all individuals with cerebral palsy from attending a movie theater.*"). ("*An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store'. Accordingly, the site of the sale is irrelevant. All that matter is whether the good or service is offered to the public.* (*Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015). The Defendant's failure to permit or include assistive technology in relation to its mobile app directly and physically screens and prevents the Plaintiff from being able to use the mobile app, just as if the Defendants in their store placed items outside the Plaintiff's reach and said the Plaintiff cannot have the items unless the Plaintiff can get the items for himself.

101. In our contemporary technological society, "excluding businesses that sell services through the Internet from the ADA would 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Netflix,* 869 F.Supp.2d at 200 (quoting *Carparts,* 37 F.3d at 20). (quoting *Nat'l Fed'n of the Blind. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015).

102. The Defendants diminish the Plaintiff's rights under the ADA to fully participate in all aspects of society, which is counter to Congress' goal. The

Defendants' ableism, as described throughout the Complaint, is excluding the Plaintiff from equality of opportunity, full participation, independent living, and economic self-sufficiency and in doing so excludes the Plaintiff from a plethora of goods and services that are offered through the mobile platform which includes but is not limited to the following:

(a) The Defendant is excluding, denying services, and otherwise segregating the Plaintiff from all of the benefits and services the Defendant offers through its mobile apps as a result of its failure to modify its mobile application platform to allow assistive technology, which includes, but is not limited to, voice recognition, alternative input methods, assistive touch functions, among other accessibility methods that the Plaintiff requires, to compete on an equal basis and maintain independent self-sufficiency;

(b) The Defendant is excluding, denying services, or otherwise segregating the Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from the Defendant's services that enables individuals to locate the nearest Marble Slab store through the mobile apps;

(c) The Defendant is excluding, denying services, or otherwise segregating the Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from the Defendant's services that enables individuals to

order a cake or view ice cream selections through the mobile apps;

**(d)** The Defendant is excluding, denying services, or otherwise segregating the Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from the Defendant's services that enables individuals to establish a rewards account and enjoy the benefits which includes but is not limited to (1) earn and view rewards and other exclusive offers, (2) view and complete challenges for rewards points, (3) view history of points, and among other features through the mobile apps;

**(e)** The Defendant is excluding, denying services, or otherwise segregating the Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from the Defendant's services that enables individuals to access and view all the benefits of Marble Slab in addition to using the barcode scanner via the mobile apps;

**(f)** The Defendant is excluding, denying services, or otherwise segregating Plaintiff, because unlike able bodied individuals, disabled individuals are excluded from the Defendant's services that enables individuals to access and view all the benefits of Marble Slab in addition to receive the benefits itself of the rewards program through the mobile apps;

**(g)** The Defendant is excluding, denying services, and otherwise segregating the Plaintiff as result of its failure to modify equipment, devices and/or

other similar services. 28 *C.F.R.* § 36.303(b)(3)-(4).

**(h)** The Defendant is excluding, denying services, or otherwise segregating the Plaintiff of all the goods and services offered on its mobile apps as result of the Defendant's failure to design its mobile apps that enable alternative assistive technology;

103. The design of the Defendant's mobile app impedes the Plaintiff and others similarly situated from accessing the services, privileges and accommodations afforded patrons through the mobile app. The mobile app fails to integrate alternative access methods that allow a person with limited manual dexterity in their hands to access the information and navigate the mobile app.

104. The actions by the Defendant violate:

**(a)** 42 U.S.C. § 12182(a), because its actions deny the Plaintiff full and equal enjoyment of the Defendant's goods and services;

**(b)** 42 U.S.C. § 12182(b)(1)(A)(i), because the Defendant's actions deny the Plaintiff equal participation in goods and services offered by the Defendant;

**(c)** 42 U.S.C. § 12182(b)(1)(A)(ii) and (iii), because the Plaintiff is provided both separate and unequal benefits of the Defendant's goods and services;

**(d)** 42 U.S.C. § 12182(b)(1)(B), because the Defendant does not provide its

goods and services in the most integrated setting appropriate;

**(e)** 28 C.F.R. 36.303(c), because the Defendant has failed to provide auxiliary aids and services where necessary to ensure effective communication with the disabled Plaintiff.

105. The Plaintiff does not allege that there are specific mandatory regulations for mobile applications that establish compliance or non-compliance as a matter of law. The Plaintiff pleads, consistent with the Department of Justice determinations, that in achieving such conformance and usability of mobile apps by individuals with disabilities, the Defendant should rely upon the User Agent Accessibility Guidelines ("UAGG") 1.0, the Authorizing Tool Accessibility Guidelines ("ATAG") 2.0, and the Guidance on Applying WCAG 2.1 to Non-Web Information and Communications Technologies ("WCAH2ICT"), published by the W3C, as well as guidance published by the W3C's Mobile Accessibility Task Force, as stated guidance published by the W3C's Mobile Accessibility Task Force.

106. To date, the Defendants' discriminating actions continue.

107. As pled above, GFG Management, LLC "owns" Marble Slab's mobile application and its goods and services offered on the mobile app, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged

above.

108. The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

109. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by the Defendants.

**WHEREFORE**, premises considered, the Plaintiff, Jeff Taylor, demands judgment against the Defendants on Counts One through Six and requests the following injunctive and declaratory relief:

1. That the Court declare that the properties owned, and businesses operated by the Defendants as well as all of the Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendants to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) its implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both

to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin the Defendants to make its business practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendants to provide the Plaintiff full and equal access both to the Marble Slab experience and to the use of the Marble Slab's store, and further order the Defendants to maintain the required accessible features at the store so that the Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendants to evaluate and neutralize their policies, practices, and procedures towards persons with disabilities for such reasonable time to allow them to undertake and complete corrective procedures;

6.  That the Court enjoin the Defendants to remediate the Marble Slab store to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four;

7.  That the Court enter an order requiring that the Defendants adopt and implement a website accessibility policy and take the necessary actions to make its website accessible to the Plaintiff, as particularly described

in Count Five;

8.  That the Court enter an order requiring the Defendants to place on its homepage a statement concerning its website accessibility policy; provide training to all its workers and associates who write or develop programs or code; and test its website quarterly to identify and repair any incidence of nonconformance;

9.  That the Court enter an order requiring the Defendants to adopt and implement a mobile application accessibility policy and take the necessary actions to make its mobile application accessible to the Plaintiff, as particularly described in Count Six;

10. That the Court enter an order requiring the Defendants to place on its mobile application a statement covering its mobile application accessibility policy; provide training to all its workers and associates who write or develop the programs and code for the mobile application; and test the mobile application quarterly to identify and repair any indication of non-conformance;

11. That the Court award reasonable attorneys' fees, costs, (including expert fees) and other expenses of suit, to the Plaintiff;

12. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 25th Day of March 2019.


                */s/ Amanda L. Powell*_____
                **Amanda L. Powell**
                **TX BAR No. 24081104**
                **Southern District of TX Federal ID No. 3220554**
                ADA Group LLC
                4001 Carmichael Road, Suite 570
                Montgomery, Alabama 36106
                334.819.4030 p
                334.819.4032 f
                ALP@ADA-Firm.com
                *Attorney for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 25th day of March 2019 to the following:

**LNS DEVELOPMENT, LLC**
Attn: Registered Agent
811 Skimmer Ct.
Sugar Land, TX 77478

**GFG MANAGEMENT, LLC**
Attn.: Legal Department
5555 Glenridge Connector, Suite 850
Atlanta, GA 30342

*/s/ Amanda L. Powell*
**Amanda L. Powell**
**TX BAR No. 24081104**
**Southern District of TX Federal ID No. 3220554**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
ALP@ADA-Firm.com
*Attorney for the Plaintiff*